UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| RICH ELBERT; JEFF A. KOSEK; REICHMANN LAND & CATTLE LLP; LUDOWESE A.E. INC.; MICHAEL STAMER; individually and on behalf of a class of similarly situated persons,<br><br>Plaintiffs,<br><br>v<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE, RISK MANAGEMENT AGENCY, et al.,<br><br>Defendants. | Case No: 18-CV-01574<br>Hon. JOHN R. TUNHEIM<br>Mag. J. TONY N. LEUNG<br><br>**THIRD AMENDED COMPLAINT FOR JUDICIAL REVIEW OF AGENCY ACTIONS, DECLARATORY AND INJUNCTIVE RELIEF, AND OTHER RELIEF**<br><br>**CLASS ACTION** |

_____

John D. Tallman (P32312)
JOHN D. TALLMAN, PLC
Attorneys for Plaintiffs
Appearing *pro hac vice*
4020 East Beltline Ave. N.E. – Suite 101
Grand Rapids, MI  49525
(616) 361-8850

David W. Fuller
U.S. Attorney's Office
Attorney for Defendants
300 S. 4th St – Suite 600
Minneapolis, MN 55415
(612) 664-5627

Markus C. Yira
Yira Law Office, Ltd.
P.O. Box 518
Hutchinson, MN 55350
(320) 587-0305

_____

**THIRD AMENDED COMPLAINT FOR JUDICIAL REVIEW OF AGENCY ACTIONS, DECLARATORY AND INJUNCTIVE RELIEF, AND OTHER RELIEF**

Plaintiffs, by and through their attorney, John D. Tallman, for their Third Amended Complaint, state as follows:

1

**INTRODUCTION**

1. Plaintiffs request judicial review of final agency action and other relief related to crop insurance known as the 2015 Dry Bean Revenue Endorsement (DBRE). This complaint is brought under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq., for declaratory and injunctive relief from administrative determinations issued by the Federal Crop Insurance Corporation ("FCIC") and the Risk Management Agency ("RMA"). The complaint also requests declaratory and injunctive relief, and contract reformation or rescission. The administrative determinations that are the subject of this action relate to the establishment of a "harvest price" under the DBRE and include the FCIC approval of the DBRE in 2012, the December 15, 2015 RMA interpretation of the 2015 Dry Bean Revenue Endorsement ("DBRE"), and the March 8, 2016 RMA interpretation of the 2015 DBRE.

2. Plaintiffs bring this action as a class action on behalf of all dark red kidney bean farmers in the District of Minnesota who purchased DBRE crop insurance coverage for their dry bean crops in 2015. The purpose of this insurance was to protect dry bean farmers against a market price decline. Although dry bean market prices declined greatly in 2015, no indemnity was paid to Plaintiffs because adverse determinations were made by Defendants RMA and FCIC related to the establishment of a "harvest price" under the DBRE for dark red kidney beans in Minnesota.

3. Plaintiffs seek a declaratory judgment that some or all of the adverse determinations issued by the FCIC and RMA were arbitrary, capricious, an abuse of discretion, and not in accordance with law; were contrary to statutes and other law; were without observance of procedure required by law; and were unwarranted by the

facts. Plaintiffs further seek an order directing that the adverse determinations of FCIC and RMA be set aside pursuant to the judicial review provisions of the Administrative Procedure Act, 5 U.S.C. § 701, et seq. (2003); that Defendants be enjoined to set a harvest price based on actual market prices for the 2015 crop year as required by 7 USC § 1508; that Defendant agencies be enjoined to take action to ensure that Plaintiffs' losses are indemnified or to take action to ensure that the premiums paid for DBRE insurance are reimbursed to Plaintiffs; and that Defendants be enjoined from taking any action inconsistent with the judgment of this Court.

## CLASS ACTION ALLEGATIONS

4. The named plaintiffs bring this action on behalf of themselves and on behalf of all dark red kidney bean farmers in Minnesota who paid an additional premium to have their beans insured by the 2015 DBRE. Plaintiffs believe that hundreds of dark red kidney bean farmers in Minnesota purchased DBRE coverage and belong to this class. The class is so numerous that joinder of all members of the class is impracticable. F.R. Civ. P. 23(a)(1).

5. The claims of the named Plaintiffs and class Plaintiffs involve questions of law and fact which are identical. F.R. Civ. P. 23(a)(2).

    A. The named Plaintiffs and class Plaintiffs are all Minnesota dark red kidney bean farmers who grew dry beans during the 2015 crop year and paid additional premiums to obtain revenue protection under the DBRE.

    B.    The named Plaintiffs and class Plaintiffs all seek to assert contractual rights conferred by the Federal Crop Insurance Act, and by the DBRE.

    C.    The named Plaintiffs and class Plaintiffs all seek declaratory, injunctive, and monetary relief requiring defendant agencies to set a harvest price that reflects the actual market price, pursuant to the DBRE and the Federal Crop Insurance Act.

6.    The claims of the named Plaintiffs are typical of the claims of the class which they seek to represent, and the named Plaintiffs have no interests which are in conflict or inimical to those of the other members of the class. F.R. Civ. P. 23(a)(3).

7.    The named Plaintiffs will fairly and adequately represent the interests of all class members. F.R. Civ. P. 23(a)(4).

8.    The prosecution of separate actions by individual members of the class would create a risk of inconsistent adjudications, which will establish incompatible standards of conduct for the Defendants and will substantially impair the ability of members of the class who are not parties to individual prosecutions to protect their interests. F.R. Civ. P. 23(b)(1).

9.    Defendants' actions or failures to act are based upon grounds generally applicable to the class, thereby making appropriate preliminary and final injunctive and declaratory relief with respect to the class as a whole. F.R. Civ. P. 23(b)(2).

10.    The questions of law and fact common to class members predominate over any questions affecting only individual members, and a class action is superior to

other available methods for fairly and efficiently adjudicating the controversy.  F.R. Civ. P. 23(b)(3).

11. The named Plaintiffs are represented by experienced attorneys who will vigorously pursue the interests of the named and Class Plaintiffs.  These attorneys do not have any conflicts of interest with respect to any crop insurance companies or agencies that may sell or promote the DBRE.

## THE NAMED PARTIES

12. Plaintiff Rich Elbert is a Minnesota resident who farms in Renville County, Minnesota, and who grew dark red kidney beans insured by the DBRE in 2015.

13. Plaintiff Jeff A. Kosek is a Minnesota resident who farms in McLeod County, Minnesota, and who grew dark red kidney beans insured by the DBRE in 2015.

14. Plaintiff Reichmann Land & Cattle LLP is a Minnesota farm which farms in Pope County, Minnesota, and which grew dark red kidney beans insured by the DBRE in 2015.

15. Plaintiff Ludowese A.E. Inc. is a Minnesota farm which farms in Sibley County, Minnesota, and which grew dark red kidney beans insured by the DBRE in 2015.

16. Plaintiff Michael Stamer is a Minnesota resident who farms in Swift, Chippewa, Kandiyohi, Renville, Stearns, and Pope Counties, Minnesota, and who grew dark red kidney beans insured by the DBRE in 2015.

17. Defendant United States Department of Agriculture ("USDA") is a department of the United States government and is the parent agency of Defendant

RMA, which in turn administers Defendant FCIC, a wholly government-owned corporation created under the Federal Crop Insurance Act, 7 U.S.C. § 1501, et seq.

## JURISDICTION AND VENUE

18. Plaintiffs' cause of action arises from the administrative determinations that relate to the establishment of a harvest price under the DBRE and include the FCIC approval of the DBRE in 2012, the December 15, 2015 RMA interpretation of the 2015 Dry Bean Revenue Endorsement ("DBRE"), and the March 8, 2016 RMA interpretation of the 2015 DBRE.

19. Plaintiffs' administrative remedies were fully exhausted as of June 6, 2016, when Defendant USDA's National Appeals Division, by and through its Deputy Director, James T. Murray, determined that the interpretations made by Defendant FCIC and Defendant RMA were matters of general applicability and, therefore, were not subject to further administrative review within USDA's National Appeals Division pursuant to 7 C.F.R. § 768(g), 7 C.F.R. § 400.96, and 7 C.F.R. § 11.6(a).

20. This Court has jurisdiction over the subject matter of this action by virtue of 5 U.S.C. § 701 et seq., 7 U.S.C. § 6999, 28 U.S.C. § 1331, and 28 U.S.C. § 1367. Sovereign immunity has been waived by 5 U.S.C. § 702 and by 7 U.S.C. § 6999.

21. Venue is proper in this district court pursuant to the terms of the applicable crop insurance policy, including the DBRE, the Common Crop Insurance Policy, and the Dry Bean Crop Provisions; 28 U.S.C. § 1391(e); and 7 U.S.C. § 1506(d).

**FACTS**

22. Revenue protection crop insurance protects farmers against a decline in market price. It has been offered for many years for crops traded on national markets such as corn, soybeans, and wheat.

23. In 2012, the FCIC Board of Directors approved a revenue protection insurance pilot program for dry pea and dry bean crops in Minnesota and North Dakota, that became effective in 2013.

24. This pilot program was developed by Watts and Associates, a privately owned economic consulting firm located in Billings, Montana, pursuant to 7 U.S.C. § 1508(h).

25. In 2013, an expansion of the pilot program was approved by the FCIC to include dry bean farmers in Michigan, effective in 2014.

26. According to the USDA, in 2015, Minnesota farmers planted over 50,000 acres of dark red kidney beans, of which over 30,000 acres were covered by the DBRE.

27. The DBRE (Exhibit A, ¶ 7) provides for "Price Discovery," and specifies that the RMA will set a "projected price" for each type of insured bean "no later than the third business day of March." The Complete Crop Insurance Policy includes the DBRE (Exhibit A), the Common Crop Insurance Policy (Exhibit B), and the Dry Bean Crop Provisions (Exhibit C).

28. The DBRE (Exhibit A, ¶ 7) also provides that the RMA will set a "harvest price" for each type of insured bean "not later than December 15 of the crop year."

29. The difference between the "projected price" and the "harvest price" is used to calculate the amount of indemnity owed to insured farmers under the DBRE in the event of a market price decline. See Exhibit A, ¶ 5.

30. Paragraphs 2 and 7 of the DBRE (Exhibit A) specify that the "harvest price" is determined by the "market price," which in turn is determined by reference to the "Bean Market News."

31. The Bean Market News is a publication of the Agriculture Marketing Service (AMS), an agency of the USDA.

32. Paragraph 7(e)(2)(C) of the DBRE (Exhibit A) provides that "A harvest price will not be established if there is a market price for fewer than 50% of the dates of publication [of the Bean Market News] included in the period defined in 2(A)." That period begins on "the first business day in September" and ends on the "last business day of November." The Bean Market News is published weekly.

33. On March 3, 2015, the RMA set a projected price for dark red kidney beans in Minnesota and North Dakota.

34. During 2015, Plaintiffs' insurers sold DBRE insurance coverage to Plaintiffs, which provided revenue protection for dark red kidney beans in Minnesota. Plaintiffs paid an additional premium for optional DBRE coverage, over and above the premium paid for basic crop insurance.

35. In 2015, the Bean Market News did not publish market prices for dark red kidney beans in Minnesota for 50% or more of the publishing dates between September and November.

36. Just once, in 2011, during the eight years before 2015 (2007-2014), did the Bean Market News publish the specified number of market prices during the specified period for dark red kidney beans in Minnesota/North Dakota). In other words, a harvest price would not have been determinable under section 7(e)(2)(C) of the DBRE for seven of the eight years prior to 2015. Therefore, it was not just foreseeable, but very likely, that the Bean Market News would not publish the specified number of market prices during the specified period in 2015.

37. The DBRE, (Exhibit A, ¶ 7(d)), provides: "Section 7(e)(3) applies in the case that either a projected price or a harvest price cannot be determined in the manner described in the following provisions."

38. Section 7(e)(3) of the DBRE (Exhibit A) addresses the procedure to be followed "[i]f a **projected price** for any of these types cannot be determined as described herein," but it does not address the procedure to be followed if a **harvest price** cannot be determined as described. Emphasis added.

39. The DBRE (Exhibit A) at paragraph 3(c) states in part: "In lieu of section 3(c)(5) of the Basic Provisions:

\*     \*     \*

> (2) If the harvest price cannot be calculated for the crop year for a type for which a projected price was determined in accordance with section 7 of this endorsement, the harvest price will be equal to the projected price."

40. The Common Crop Insurance Policy (Exhibit B), of which the DBRE is "attached to and made part of" states at ¶ 3(c)(5)(ii) that "[i]f the . . . harvest price cannot be calculated for the current crop year under the provisions [of the policy],"

9

\* \* \*

    (A)    Revenue protection will continue to be available; and

    (B)    The harvest price will be determined and announced by FCIC.

41.    The Dry Bean Revenue Insurance Standards Handbook (Exhibit D) provides, at Part 2, Responsibilities, ¶N, in the event of an "Inability to Determine a Harvest Price but a Projected Price was Established as Defined. . . . RMA will establish the harvest price."

42.    7 U.S.C. § 1508(c)(5) provides in part that " . . . the Corporation shall establish . . . the price level ( . . . "expected market price") of each agricultural commodity for which insurance is offered", that "the expected market price of an agricultural commodity (i) may be based on the actual market price of the agricultural commodity at the time of harvest, as determined by the Corporation," and that "(ii) in the case of revenue . . . plans of insurance, may be the actual market price of the agricultural commodity as determined by the Corporation."

43.    Actual market prices for dark red kidney beans in Minnesota during September through November of 2015 were contemporaneously available and are available now from the grain elevator processors who bought the subject insured beans from the Plaintiff farmers. These actual market prices show a great decline from the projected prices for the subject beans.

44.    On December 15, 2015 the RMA set the harvest prices for dark red kidney beans at an amount equal to the projected prices – an act that was contrary to law, that was contrary to the intent and purpose of the DBRE, that negated the revenue

protection insurance coverage provided by the DBRE, that deprived Plaintiffs of the DBRE indemnity to which they are entitled, and that was grossly and palpably unfair.

45. Despite the act of the RMA negating the revenue protection afforded by the DBRE, Plaintiffs' insurers have retained the additional premium paid by Plaintiffs for DBRE coverage. In other words, Plaintiffs paid for additional coverage in 2015, but received neither that additional coverage nor their money back.

46. On February 16, 2016, Gregory Ackerman, acting as the chair of the Michigan Bean Commission, and on behalf of all Plaintiffs, together with Carl Bednarski, President of the Michigan Farm Bureau, sent a request to the FCIC's Board of Directors requesting that the harvest price be recalculated so that it reflected the actual market price. Exhibit E, letter of February 16, 2016.

47. On March 8, 2016, the chairman of the FCIC, Dr. Robert Johansson, denied Mr. Ackerman's request. Exhibit F, letter of March 8, 2016.

48. On April 13, 2016 Mr. Ackerman requested a determination from the RMA and the National Appeals Division (NAD) of the USDA that the March 8, 2016 letter of Dr. Johansson constituted a "determination made by FCIC that is a matter of general applicability [that] is not subject to administrative review," in accordance with the requirements of Section 20(k) of the basic provisions, (Exhibit B) and pursuant to 7 C.F.R. 400.91(e), *inter alia*.

49. On April 28, 2016, the RMA, through its deputy administrator for insurance services, Robert Ibarra, "decline[d] to render a determination of general applicability . . . because the RMA has not made any determinations in regard to your client's policy." Exhibit G.

50. On June 6, 2016, the NAD, by its deputy director, James T. Murray, issued a decision that the FCIC determination was a matter of general applicability and thus not appealable within the NAD. This decision was a final administrative determination. Exhibit H.

## COUNT I

51. Plaintiffs hereby repeat and incorporate each and every allegation contained in the prior paragraphs as if fully set forth herein.

52. The applicable insurance policy (including the DBRE, (Exhibit A), the Common Crop Insurance Policy (Exhibit B), and the Dry Bean Crop Provisions (Exhibit C)); the Dry Bean Revenue Insurance Standards Handbook (Exhibit D); 7 U.S.C. § 1508; the common law; and basic principles of equity all dictate that the harvest price be calculated by the RMA based on actual market prices.

53. That the administrative determinations of the FCIC and RMA of December 15, 2015 and March 8, 2016 interpreting the DBRE to require the harvest price to be set equal to the projected price, and thereby negate revenue protection insurance coverage, were arbitrary, capricious, an abuse of discretion, and not in accordance with law; were contrary to statutes and other law; were without observance of procedure required by law; and were unwarranted by the facts.

WHEREFORE, Plaintiffs request the Court to declare the administrative determinations of the FCIC and RMA of December 15, 2015 and March 8, 2016 to be contrary to law, and to order (enjoin) the RMA to set the harvest price at an amount based upon actual market prices, and to order such other relief as may be necessary to ensure that the proper amount of indemnity is paid to Plaintiffs.

## COUNT II

54. Plaintiffs hereby repeat and incorporate each and every allegation contained in the prior paragraphs as if fully set forth herein.

55. That the DBRE lacks an essential contract provision such that the purpose of the contract and the intent of the parties are subverted by its absence. To wit, the DBRE omits the procedure to be followed "in the case that . . . a harvest price cannot be determined in the manner described [in the DBRE]." DBRE ¶ 7(d). The parties to the contract intended that the harvest price be set by the RMA based on actual market prices in the event that the harvest price could not be determined in the manner described in the DBRE.

56. That the essential contract provision was absent from the DBRE at the time that the DBRE was approved by the FCIC and RMA in 2012 and 2013.

57. That the RMA and FCIC are required by 7 U.S.C. 1508(c)(5) to set harvest prices that reflect actual market prices. The RMA and FCIC may approve policies submitted pursuant to 7 U.S.C. 1508(h) only if those policies adequately protect the interests of producers, are viable and marketable, and provide insurance coverage in a significantly improved form. The missing essential contract provision rendered the DBRE non-viable and non-marketable; precluded the DBRE from protecting the interests of producers; and precluded the DBRE from providing insurance coverage at all, let alone in a significantly improved form.

58. That the administrative determinations of the FCIC and RMA approving the DBRE without this essential contract provision were arbitrary, capricious, an abuse of discretion, and not in accordance with law; were contrary to statutes and other law;

were without observance of procedure required by law; and were unwarranted by the facts.

59.   That either the Plaintiffs and the insurance companies both believed and relied on the RMA and FCIC's averment that the DBRE in fact provided revenue protection insurance coverage to Plaintiffs, or, Plaintiffs unilaterally believed that the DBRE provided such coverage and acted in reliance on that belief, while the insurers knew that it did not, but accepted payment of DBRE premiums by Plaintiffs, knowing there was no DBRE coverage. This mutual mistake or unilateral mistake with fraud necessitates reformation of the DBRE to reflect the intent of the parties at the time of contracting.

60.   That the FCIC and RMA's approval and interpretation of the DBRE subverted the intent and understanding of the parties to the contract, resulting in a complete failure of consideration by precluding even the possibility of recovery, such that it would be inequitable for the DBRE premium not to be reimbursed to Plaintiffs.

WHEREFORE, Plaintiffs request the Court to declare the 2012 and 2013 administrative determinations of the FCIC and RMA approving the DBRE in the absence of the essential contract provision were arbitrary and capricious, were contrary to law, were without observance of procedure required by law, and ignored a fundamental aspect of the problem; to declare that the Court will reform the contract by supplying the essential contract provision and ordering (enjoining) the FCIC and RMA to set the harvest price at an amount based on actual market prices; and to order such other relief as may be necessary to ensure that the proper amount of indemnity is paid to Plaintiffs or, in the alternative, to declare that the DBRE, as approved and interpreted

by the FCIC and RMA, did not actually provide the promised insurance coverage, but instead provided only the illusion of insurance coverage and resulted in a failure of consideration; to order that the DBRE portion of the insurance contracts be rescinded by the RMA; and to order such other relief as may be necessary to ensure that the premium payments attributable to the DBRE are reimbursed to Plaintiffs.

JOHN D. TALLMAN, PLC
Attorneys for Plaintiffs

Dated:  February 26, 2019

BY:/s/  John D. Tallman
_____
John D. Tallman (P32312)
jtallmanlaw@gmail.com

BUSINESS ADDRESS & TELEPHONE:
4020 East Beltline Avenue N.E. – Suite 101
Grand Rapids, MI  49525
(616) 361-8850