**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

RICH ELBERT, JEFF A. KOSEK, REICHMANN LAND & CATTLE LLP, LUDOWESE A.E. INC., and MICHAEL STAMER,

                    Plaintiffs,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE, RISK MANAGEMENT AGENCY, and FEDERAL CROP INSURANCE CORPORATION,

                    Defendants.

Civil No. 18-1574 (JRT/TNL)

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES**

---

John D. Tallman, **JOHN D. TALLMAN, PLLC,** 4020 East Beltline Avenue Northeast, Suite 101, Grand Rapids, MI 49525; Markus C. Yira, **YIRA LAW OFFICE, LTD**, P.O. Box 518, Hutchinson, MN 55350 for plaintiffs.

David W. Fuller, **UNITED STATES ATTORNEY'S OFFICE,** 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for defendants.

Plaintiffs are dark red kidney bean farmers from Minnesota that purchased revenue insurance coverage from the U.S. Department of Agriculture Risk, Management Agency, and the Federal Crop Insurance Corporation (together the Defendants") to protect against a decline in bean prices.  Plaintiffs succeeded in their claim against the Defendants for improperly altering their insurance plan and converting their revenue coverage into yield protection.

The Plaintiffs seek $347,006.50 in attorneys' fees and costs under the Equal Access to Justice Act ("EAJA").  Because the Court finds that Plaintiffs are the prevailing party and that the Defendants' pre-litigation and litigation positions were not substantially justified, the court will grant Plaintiffs attorneys' fees and costs under the EAJA.  However, the Court will reduce the total fees awarded by one-fifth because one of the five plaintiffs did not certify that it was an eligible party under the EAJA.  The Court increases the statutorily provided hourly rate to adjust for inflation, and to account for counsel's experience and expertise.  Thus, the Court grants Plaintiffs a total of $258,064.00, which represents $256,945.00 in attorneys' fees and $1,119.00 in costs.

## BACKGROUND

I.      **FACTUAL BACKGROUND**

The Court provided the relevant facts in detail in a previous order and will provide only an abbreviated version here.  *See Elbert v. U.S. Dep't of Agric.* ("*Elbert II*")*,* 546 F. Supp. 3d 814, 816 (D. Minn. 2021).[1]

Defendant Federal Crop Insurance Corporation ("FCIC") provides crop insurance policies under the Federal Crop Insurance Act.  7 U.S.C. § 1508.  To obtain a policy, the private-party applicants first design policies and submit them to the FCIC Board ("the Board") for approval, these submissions are known as Section 508 (h) submissions.  7

---

[1] *See also Elbert v. U.S. Dep't of Agric.* ("*Elbert I*"), No. 18-1574, 2020 WL 4926635 (D. Minn. Aug 21, 2020).

U.S.C. § 1508(h)(1)(A). The Board must approve a 508(h) submission if it determines, among other things, that the crop insurance policy will adequately protect the interests of producers. 7 U.S.C. § 1508(h)(3)(A)(i).

In 2011, Watts and Associates, Inc., the Northarvest Bean Growers Association, and the USA Dry Pea and Lentil Council (collectively, "Watts") made a 508(h) submission to the Board that included a proposal to provide revenue protection to pulse-crop farmers for an additional premium. *Elbert II,* 546 F. Supp. 3d at 816. The policy would insure against a drop in crop prices, as measured by the difference between the spring projected price and the actual fall harvest price. *Id.* The submission specified that the projected price would be obtained from processors in January and February and the harvest price would be set using data published by the AMS Bean Market News (the "AMS Method"). *Id.* The proposed policy provisions and handbook to accompany the policy stated that if the AMS data was insufficient to set the harvest price for the year, the FCIC would set the harvest price. *Id.* However, in its submission, Watts also included language that dictated that when the harvest price could not be determined, the "projected price be substituted for any missing AMS monthly harvest price observations." *Id.*

During the agency review of the submission, an expert reviewer recommended against substituting with the projected price because "[i]n the extreme case where AMS fails to report a price for September, October, and November the harvest price would be equal to the projected price and the revenue insurance product . . . would revert to a yield

-3-

insurance product," which would be "unfair to growers who pay for revenue insurance[.]"

*Id.* at 817.  The Risk Management Agency ("RMA") echoed this same concern to the Board.

*Id.*  And during the final consideration of Watt's proposal, the Board was presented with

a PowerPoint that noted that substituting the projected price for the harvest price would

convert the proposed revenue-coverage policy to yield protection.  *Id.*   Therefore, the

Board was "unmistakably told three times that setting the harvest price equal to the

projected price would make the policy worthless, as it would convert the policy's intended

revenue protection into mere yield protection[.]" Id. at 821.

In 2012, the Board approved the submission and permitted the RMA to make

technical changes necessary to make the policy legally sufficient.  *Id.* at 818.  For reasons

unclear in the administrative record, the section of the policy dealing with the substitution

of the harvest price was completely rewritten after approval.  *Id.*  Under the altered policy,

if the harvest price could not be calculated using the AMS Method, it would equal the

projected price.  *Id.*

In 2015, Plaintiffs purchased the plan that contained this substituted language.  *Id.*

In December of that year, it became clear that there would not be sufficient AMS data to

establish a harvest price for dark red kidney beans in Minnesota.  *Id.*  As a result, the RMA

announced that pursuant to the policy language in the Endorsement, the harvest price

would be set to the projected price.  *Id.*  And, as predicted, this essentially converted the

Plaintiffs' revenue policies into expensive yield policies, which meant the Plaintiffs could not recoup their revenue losses. *Id.*

## II.     PROCEDURAL HISTORY

The Plaintiffs initially brought this case in the Eastern District of Michigan as a putative class action on behalf of farmers in Michigan, Minnesota, and North Dakota, arguing that the Defendants actions were arbitrary and capricious. (*See generally* Compl., June 5, 2017, Docket No. 1.)  The Eastern District of Michigan dismissed the Minnesota Plaintiffs for improper venue and transferred them to the District of Minnesota.  (Order Granting Mot. Dismiss at 19, Apr. 18, 2019, Docket No. 70; Transfer, June 8, 2018, Docket No. 81.)  The parties filed cross motions for summary judgment and the Court initially granted summary judgment for the Defendants. *Elbert v. U.S. Dep't of Agric.* ("*Elbert I*"), No. 18-1574, 2020 WL 4926635, at *1 (D. Minn. Aug 21, 2020).  The Eastern District of Michigan similarly granted summary judgment for the Defendants. *Elbert II*, 546 F. Supp. 3d at 819.  But the Sixth Circuit subsequently reversed that decision in part because the policies actually sold to the bean farmers did not include the same provisions that were approved by the Board and such changes were significant and required resubmission to the Board. *Id.* at 819–20.

The  Minnesota  Plaintiffs  requested  permission  to  file  a  motion  for reconsideration—which the Court granted—to address whether the changes made to the policy were "significant" under regulations in place at the time and, if they were, whether the policy should have been resubmitted to the Board.  (Request, Sept. 3, 2020, Docket

No. 172; Order at 6–7, Oct. 1, 2020, Docket No. 173.)  The Court ultimately granted

summary judgment to the Plaintiffs because the changes were significant, and the

Defendants violated the Administrative Procedures Act by failing to resubmit the altered

policy to the Board.  *Elbert II,* 546 F. Supp. 3d at 815–16 (D. Minn. 2021).  The Court

vacated the existing agency action and remanded to the Federal Crop Insurance

Corporation for further consideration.  *Elbert v. U.S. Dep't of Agric.* ("*Elbert III*")*,* No. 18-

1574, 2022 WL 2670069, at *1 (D. Minn. July 11, 2022).

The Plaintiffs have now filed a motion for attorney's fees and costs pursuant to the

EAJA.  (Mot. Attorneys' Fees, Oct. 7, 2022, Docket No. 220.)  They argue that they are

eligible prevailing plaintiffs, that the government's position through this litigation was not

substantially justified, and that the fees requested are reasonable.  (*See generally id.*)

They request compensation for 988.25 hours of work at a rate of $350.00 per hour.  (Mot.

Attorneys' Fees, Ex. 1, at 47, Oct. 7, 2022, Docket No. 220-1.)  Plaintiffs request a total

$347,006.50, which includes $1,119.00 for costs incurred.  (*Id.*)  The Defendants oppose

the motion, arguing that the Plaintiffs are not eligible under the EAJA, that the

government's position was substantially justified, and that the requested fees are

excessive.  (Resp. Mot. Attorneys' Fees, Nov. 14, 2022, Docket No. 228.)

**DISCUSSION**

**I.     LEGAL STANDARD**

Under the EAJA, a prevailing party in an action against the United States or one of

its agencies is entitled to an award of attorneys' fees and expenses unless the United

States' position was substantially justified, or special circumstances would make an award

unjust.  28 U.S.C. § 2412(d)(1)(A).  If an award is appropriate under the EAJA, the fees

awarded must be "reasonable and necessary."  *Kelly v. Bowen*, 862 F.2d 1333, 1335 (8th

Cir. 1988) (citation omitted).

The party seeking an award must provide evidence to support the reasonableness

of the fees, both as to the hourly rate and the hours worked and should "exclude from a

fee request hours that are excessive, redundant, or otherwise unnecessary."  *Hensley v.*

*Eckerhart*, 461 U.S. 424, 433-34 (1983); *see also Wheeler v. Mo. Highway & Transp. Com'n*,

348 F.3d 744, 754 (8th Cir. 2003).  A district court has substantial discretion when

determining the reasonableness of attorney's fees.  *Hensley*, 461 U.S. at 437; *Jarrett v.*

*ERC Props., Inc.*, 211 F.3d 1078, 1084–85 (8th Cir. 2000).

**II.    ANALYSIS**

**A.     Plaintiff's Eligibility**

To be considered a prevailing party, "a plaintiff must obtain actual relief on the

merits of his claim that materially alters the legal relationship between the parties by

modifying the defendant's behavior in a way that directly benefits the plaintiff."  *John T.*

-7-

*ex rel. Robert T. v. Iowa Dep't of Educ.*, 258 F.3d 860, 863–64 (8th Cir. 2001) (internal

quotations omitted) (citing *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992)).  But not every

prevailing party is eligible to recover fees under the EAJA.  The EAJA defines the term

"party," in part, to include only individuals with a net worth not exceeding $2 million, or

entities with a net worth not exceeding $7 million and with less than 500 employees at

the commencement of the action.  *See* 28 U.S.C. § 2412(d)(2)(B).  The party requesting

EAJA fees bears the burden of establishing eligibility for the award.  *See* 28 U.S.C. §

2412(d)(1)(B) (requiring the party seeking the award to submit documentation to the

court showing it is the prevailing party and it is eligible to receive an award).  An affidavit

by the plaintiff is typically sufficient to establish eligibility, lacking a challenge by the

defendant.  *D'Amico v. Indust. Union of Marine and Shipbuilding Workers of Am., AFL-CIO*,

630 F. Supp. 919, 922–23 (D. Md. 1986).

Here, only four of the five total plaintiffs submitted declarations regarding their

eligibility.  Defendants do not challenge the eligibility of the four plaintiffs that submitted

declarations.  (*See* Mot. Attorneys' Fees, Ex. 1, at 2–5; Resp. Mot. Attorneys' Fees at 7.)

Rather, Defendants challenge whether the Plaintiffs may recover at all since one plaintiff

did not represent that it is eligible.  Defendants request that the Court obtain additional

information to determine whether the fifth plaintiff's eligibility is fatal to the motion for

attorneys' fees.  However, the Court determines that it is unnecessary to do so.

Courts have routinely apportioned attorneys' fees among eligible parties despite the fact that the EAJA itself does not have a provision for apportionment.  *See United States v. 269 Acres, More or Less, Located in Beaufort Cnty., S.C.,* No. 9:16-2550, 2020 WL 219792, at *9 (D.S.C. Jan. 15, 2020), *aff'd in part, rev'd in part on other grounds,* 995 F.3d 152 (4ᵗʰ Cir. 2021) (collecting cases).  The Court finds this to be an appropriate approach in this case and will grant four-fifths of any applicable attorneys' fees to the Plaintiffs in this case.  Because Defendants do not challenge the four plaintiffs who submitted declarations' eligibility, the Court finds that Plaintiffs have met their burden under this requirement of the EAJA.

### B.    Substantially Justified Position

An award is not permissible under the EAJA if the Defendants' litigation position was substantially justified.  § 2412(d)(1)(A).  A substantially justified position is one that "had a reasonable basis in law and fact."  *Welter v. Sullivan*, 941 F.2d 674, 676 (8ᵗʰ Cir. 1991) (citing *Pierce v. Underwood*, 487 U.S. 552, 565–66 (1988)).  The Defendants must also show they acted reasonably "at both the prelitigation and litigation stages."  *Keasler v. United States*, 766 F.2d 1227, 1231 (8ᵗʰ Cir. 1985) (citation omitted).  The burden is on the Defendants to show that their position was substantially justified.  *Lauer v. Barnhart*, 321 F.3d 762, 764 (8ᵗʰ Cir. 2003).

### 1.  Pre-Litigation Position

Defendants argue their actions were substantially justified because they relied upon the recommendations of multiple experts and such reliance was rational.  However,

the FCIC Board was told three times that setting the harvest price equal to the projected

price would make the policy worthless.  Additionally, there was no clear explanation on

the record for why the relevant section of the policy was completely rewritten.  *Elbert II*,

546 F. Supp. 3d at 818.  Therefore, the Court concludes that the pre-litigation position of

the agency was not substantially justified.

### 2.  Litigation Position

The Defendants argue that their litigation position was substantially justified as

evidenced by the fact that they were originally granted summary judgment.  However,

the government is not exempt "from liability under the EAJA merely because it prevailed

at some interim point in the judicial process."  *U.S. S.E.C. v. Zahareas*, 374 F.3d 624, 626

(8th Cir. 2004) (quoting *Sierra Club v. Sec'y of Army,* 820 F.2d 513, 517 (1st Cir. 1987)).

The Defendants' position during litigation was not substantially justified and was

instead based on a serious error.  There was ample evidence that Defendants should have

been aware that the changes made to the policy were a significant change that should

have been resubmitted to the Board.  *Elbert II,* 548 F. Supp. 3d at 821.  Additionally—as

the Court previously noted—by converting the policy from revenue protection into yield

protection, the RMA "failed to adequately consider the impact . . . on producers' interests,

and its actions were therefore arbitrary and capricious."  *Id.* at 822.  Therefore, the Court

concludes that the Defendants' litigation position was not substantially justified.

Because the Plaintiffs are eligible parties and the Court has determined that the Defendants' positions were not substantially justified, the Court will grant attorneys' fees to Plaintiffs.

### C.      Reasonable Fees

When determining the appropriate amount of fees to grant, the Court should start by calculating the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Smith v. AS Am., Inc.*, 829 F.3d 616, 623 (8th Cir. 2016) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  In determining the reasonableness of attorney's fees, the Supreme Court has instructed courts to consider:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 429–30 n.3.

After this initial determination, the Court has discretion to adjust the fees based on factors such as the results obtained in the litigation.  *Id*.  Here, Defendants challenge both the number of hours spent on the litigation and the rate requested, and propose further adjustments based on the final outcome.

### 1. Hours

Hours that are not "reasonably expended" should be excluded from the initial calculation of fee hours. *Id.* at 434.[2] This may include hours that are excessive, redundant, or otherwise unnecessary. *Id.* However, "[a] district court 'need not, and indeed should not,' scrutinize each billing entry of an attorney who is seeking a fees award, because the 'essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.'" *Ricketson v. Advantage Collection Professionals, LLC*, No. 21-2541, 2022 WL 3701442, at *4 (D. Minn. Aug. 26, 2022) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

Plaintiffs requested a total of 988.25 hours, which includes a significant number of hours litigating the matter in the Eastern District of Michigan. Plaintiffs request fees starting in 2016, and this action was originally filed in Michigan in 2017. The case was not transferred to Minnesota until June 8, 2018. Thus, Defendants argue that hours worked prior to June 8, 2018, are outside of the Court's jurisdiction. *See Lundin v. Mecham*, 980 F.2d 1450, 1463 (D.C. Cir. 1992) (declining to award fees incurred in a related case in a different jurisdiction). But the Court finds that the hours the Defendants dispute are not in a **related** matter, but instead are in the **same** matter, which was transferred. Therefore, the Court obtained jurisdiction over the work done prior to the transfer.

---

[2] Although *Hensley* involved a different fee-shifting statute, the Supreme Court stated that "[t]he standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" 461 U.S. at 433 n.7.

Additionally, multiple courts, including those in this district, have awarded fees for work completed before a complaint was filed in an action. *See e.g., Evans v. Berryhill*, 298 F. Supp. 3d 1210, 1213 (D. Minn. 2018) (awarding 1.5 hours of fees for pre-complaint activities). Therefore, the Court will decline to subtract the 420.5 hours of fees arising out of the litigation in the Eastern District of Michigan.

Finally, Defendants challenge the hours spent on work before the Eighth Circuit, the Judicial Panel on Multidistrict Litigation, and on unsuccessful motions such as the motions for class certification, supplementation of the administrative record hours, and contract reformation. However, a "plaintiff can be compensated for work on unsuccessful claims if they are sufficiently related to the successful claim because they involve a common core of facts or are based on related legal theories." *Marez v. Saint-Gobain Containers, Inc.*, 688 F.3d 958, 965 (8th Cir. 2012) (internal quotations omitted) (citing *Emery v. Hunt*, 272 F.3d 1042, 1046 (8th Cir. 2001)). "The most important factor in determining what is a reasonable fee is the magnitude of the plaintiff's success in the case as a whole." *Jenkins by Jenkins v. State of Mo.*, 127 F.3d 709, 716 (8th Cir. 1997). The Court finds that the hours at issue here are sufficiently related to the claim on which Plaintiffs prevailed; therefore, the Court will decline to reject them.

The Court finds that the total of 988.25 hours is appropriate.

### 2. Hourly Rate

Ordinarily, attorneys' fees awarded under the EAJA may not exceed the rate "of $125.00 per hour unless the court determines that an increase in the cost of living . . .

justifies a higher fee."   28 U.S.C. § 2412(d)(2)(A).  An increase in cost of living can be determined by looking at the Bureau of Statistics Consumer Price Index (CPI).  *Hickey v. Sec'y of HHS*, 923 F.2d 585, 586 (8th Cir. 1991) (stating the CPI "constitutes 'proper proof' of the increased cost of living since the EAJA's enactment and justifies" an increased attorney's fees award) (quoting *Johnson v. Sullivan*, 919 F.2d 503, 504 (8th Cir. 1990)).  In this case, the adjusted rate based on the CPI would equal to $239.25 per hour.[3] Defendants agree that the rate in this case should be adjusted for the cost of living but challenge the Plaintiffs' request of $350.00 per hour based on counsel's experience and expertise.

An attorney's unique expertise and years of experience can justify a higher hourly rate.  *See Fukita v Gist*, No. 20-1869, 2021 WL 754149, at *2 (D. Minn. Feb. 26, 2021).  A higher rate may also be warranted if it is comparable to the rates of other attorneys in the same geographical region.  *Id.*  Plaintiffs accordingly argue that the requested $350.00 hourly rate is reasonable because their attorney has 41 years of experience in crop insurance litigation and his hourly rate falls between the mean and 75th percentile of rates for lawyers in Grand Rapids, Michigan, who specialize in civil litigation and have practiced more than 35 years.  (Mot. Attorneys' Fees at 12.)  The Court agrees that an adjustment

---

[3] This estimate was calculated using the Bureau of Labor Statistics' CPI Inflation Calculator to determine how much buying power $125 in March 1996, the date of the EAJA's enactment, would have in October 2022, when this motion was filed.  *See CPI Inflation Calculator*, U.S. Bureau of Lab. Stats., https://www.bls.gov/data/inflation_calculator.htm.

based on experience is warranted. However, fee shifting statuses such as the EAJA were not designed to perfectly replicate the fee an attorney could earn in a private fee arrangement. *See Penn. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). The Court finds a more appropriate hourly rate for Plaintiffs' counsel to be $325.00.

Based on an hourly rate of $325.00 and 988.25 compensable hours, the Court finds the total presumptive attorney's fees award before special adjustments to be $321,181.25.

### 3. Special Adjustment

After determining the value of a reasonable number of hours multiplied by a reasonably hourly rate, the court may consider other factors to "adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Hensley,* 461 U.S. at 434. The Court has already determined that it will reduce the total amount by 20% to account for the fifth Plaintiff that did not show eligibility for fees and costs under the EAJA.

Defendants argue that the Court should further diminish the award because Plaintiffs were not wholly successful in obtaining the relief they sought. The "results obtained" factor "is particularly crucial where a plaintiff is deemed 'prevailing' even though [they] succeeded on only some of [their] claims for relief." *Marez*, 688 F.3d at 965 (quoting *Hensley*, 461 U.S. at 434). In this case, the Plaintiffs technically brought two counts. Count I sought that the Court order "RMA to set the harvest price at an amount

-15-

based upon actual market prices." (3rd Am. Compl. at 12, Feb. 26, 2019, Docket No. 89.)

Count II sought that the Court declare the agency's action to be arbitrary and capricious,

which the Court did, but also that the Court "reform the contract," which the Court did

not. (3rd Am. Compl. at 14.)  Ultimately, the Court opted to vacate the agency's action

and remanded for further consideration.  *Elbert III*, 2022 WL 2670069, *1.  Thus,

Defendants argue that Plaintiffs succeeded only partially on one of their claims.

However, there is no "precise rule or formula" for determining what portion of

fees to attribute to a specific aspect of a case in which the plaintiff prevailed.  *Hensley*,

461 U.S. at 436.  In this case, Plaintiffs prevailed on the most important aspect of their

claim: that the agency's actions were arbitrary and capricious.  The fact that the Court did

not grant the specific relief sought under each claim does not counsel against awarding

attorneys' fees in full because the Court finds that Count I and Count II were in fact part

of the same claim.  Therefore, the attorneys' award will not be reduced under this factor.

After reducing the fees award by one-fifth, the total amount of fees awarded in

this case shall be $256,945.00.

### D.      Costs

The Court will award costs in full and not reduce them by one-fifth.  Therefore, the

final costs are $1,119.00.

### E.      Assignment of Fees

The final issue before the Court is the Plaintiffs' request that all awarded costs and

fees be assigned to their attorney, Mr. Tallman.  EAJA fees are typically awarded to the

prevailing party, not the attorney. *Astrue v. Ratliff*, 560 U.S. 586, 593 (2010) ("We hold

that a § 2412(d) fees award is payable to the litigant."); *see also Ubel v. Colvin*, No. 13-

875, 2014 WL 2009051, *4 (D. Minn. May 14, 2014) ("EAJA fees are awarded to the

prevailing party, not the attorney.") (collecting cases)).   An assignment of fees by the

prevailing party to his or her attorney "does not establish that the statute 'awards' the

fees directly to the attorney." *Ratliff*, 560 U.S. at 593.   One reason the fee award is

payable to the plaintiff is because it may be subject to an offset if the plaintiff owes any

federal debt.  *Id.* at 594.  All plaintiffs except Stamer submitted an affidavit attesting to

the fact that they have no federal debt.  Nevertheless, the Court will award the fees to

Plaintiffs, who may then fulfill their contractual obligations with their counsel.

## CONCLUSION

The Court awards Plaintiffs $256,945.00 in attorneys' fees and $1,119 in costs

because they are the prevailing party on the most critical issues in this litigation and

because the Defendants' position was not substantially justified both during and pre-

litigation.[4]  The Court finds that these amounts are reasonable and justified.

---

[4] The Eastern District of Michigan also approved Plaintiffs' request for attorneys' fees in that litigation.  *See Ackerman Bros. Farms, LLC v. United States Dep't of Agric.*, No. 1:17-11779, 2023 WL 4280817, at *7 (E.D. Mich. Mar. 1, 2023), *report and recommendation adopted*, No. 1:17-11779, 2023 WL 4276459 (E.D. Mich. June 29, 2023).

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that Plaintiffs' Motion for Attorneys' Fees and Costs [Docket No. 220]

is **GRANTED in part and DENIED in part** as follows:

1.  Plaintiffs shall recover from Defendants attorneys' fees in the amount of

    $256,945.00; and

2.  Plaintiffs shall recover from Defendants costs in the amount of $1,119.00.


DATED: July 24, 2023
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge