UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| RICH ELBERT, JEFF A. KOSEK, REICHMANN LAND & CATTLE LLP, LUDOWESE A.E. INC., and MICHAEL STAMER, *individually and on behalf of a class of similarly situated persons*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE, RISK MANAGEMENT AGENCY, and FEDERAL CROP INSURANCE CORPORATION,<br><br>Defendants. | Civil No. 18-1574 (JRT/SGE)<br><br>**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' PETITION FOR WRIT OF MANDAMUS AND MOTION TO AMEND** |

John D. Tallman, **JOHN D. TALLMAN, PLLC**, 4020 East Beltline Avenue Northeast, Suite 101, Grand Rapids, MI 49525; and Markus C. Yira, **YIRA LAW OFFICE, LTD**, P.O. Box 518, Hutchinson, MN 55350, for Plaintiffs.

David W. Fuller, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Defendants.

Plaintiffs are farmers of dark red kidney beans.  In 2015, they purchased insurance that was supposed to offer them revenue protection by insuring against a drop in price from the spring projected price and the fall harvest price.  Defendants, including the Federal Crop Insurance Corporation Board, approved those policies to be sold on the market but included a back-up provision: if there ever came a time when there was insufficient data to calculate a harvest price in the fall, the insurance policy would instead

set the fall harvest price at the spring projected price. That back-up provision kicked in in 2015, but it rendered Plaintiffs' policies essentially worthless, so this Court ordered Defendants to reevaluate the insurance product to ensure that it adequately protected the interests of farmers. Defendants reopened that evaluation but ultimately came to the same, seemingly irrational, conclusion: an insurance product that uses the projected price for the harvest price in the absence of sufficient data does enough to protect farmers.

Plaintiffs now return to this Court, seeking a writ of mandamus to order the Defendants to either reevaluate the policy once again or comb through data to set a 2015 harvest price retroactively. Because Plaintiffs do not have a clear right to relief, because Defendants had some discretion in how it complied with this Court's order, and because Plaintiffs has an alternative remedy in a new Administrative Procedure Act ("APA") claim, the Court must deny the petition for a writ of mandamus and close this case. Because the case will be terminated, the Court will also deny Plaintiffs' motion to amend.

## BACKGROUND

**I.    FACTS**

The Court has detailed the facts of this long-winding case in several prior orders. *See, e.g.*, *Elbert v. U.S. Dep't of Agric.* ("*Elbert I*"), No. 18-1574, 2020 WL 4926635 (D. Minn. Aug. 21, 2020); *Elbert v. U.S. Dep't of Agric.* ("*Elbert II*"), 546 F. Supp. 3d 814, 816 (D. Minn. 2021); *Elbert v. U.S. Dep't of Agric.* ("*Elbert III*"), No. 18-1574, 2022 WL 2670069 (D. Minn. July 11, 2022); *Elbert v. U.S. Dep't of Agric.* ("*Elbert IV*"), No. 18-1574, 2023 WL 4704450

(D. Minn. July 24, 2023). The Court summarizes only the relevant facts for the present motion.

Plaintiffs are kidney-bean farmers who purchased crop insurance in 2015. *Elbert I*, 2020 WL 4926635 at *1. Crop insurance comes in many varieties, including yield protection and revenue protection. Yield protection provides "protection against a production loss." 7 C.F.R. § 457.8 (Common Crop Insurance Policy). Revenue protection provides "protection against loss of revenue due to a production loss, price decline or increase, or a combination of both." *Id.*

The Federal Crop Insurance Corporation ("FCIC") provides reinsurance for private crop insurance policies approved pursuant to the Federal Crop Insurance Act ("FCIA"). 7 U.S.C. § 1508(h). Private parties design the policies and submit them to the FCIC Board through a 508(h) submission. *Id.* § 1508(h)(1)(A). The Board must approve a 508(h) submission if it determines, among other things, that the crop insurance policy will adequately protect the interests of producers. *Id.* § 1508(h)(3)(A)(i).

In 2011, Watts and Associates, Inc., the Northarvest Bean Growers Association, and the USA Dry Pea and Lentil Council (collectively, "Watts") made a 508(h) submission to the Board proposing to offer revenue protection to pulse-crop[1] farmers to insure against a price decrease of crops as measured by the projected price in the spring and the

---

[1] A pulse crop is a legume which is harvested for its dry seed, and the category includes dried beans, lentils, and peas.

actual harvest price in the fall. (Admin. R. ("FCIC") at 827–30, Aug. 14, 2019, Aug. 15, 2019, Docket Nos. 116–22.) The 508(h) submission provided that processers would provide the projected price in January and February, and the harvest price would be set using data published by the AMS Bean Market News (the "AMS Method"). (FCIC 875–76.) In the event of insufficient AMS data to set a harvest price, Watts proposed a contingency procedure that allowed the FCIC to set the harvest price. (FCIC 988, 1017.) In a different section of the proposal, however, Watts recommended that the projected price should be substituted for the harvest price if the AMS Method failed. (FCIC 894.)

When the FCIC reviewed Watts' original submission, an expert reviewer and the FCIC noted that substituting the projected price would transform the policy into a pseudo-yield protection policy, even though farmers would have paid for revenue protection, and that such a policy would be unfair to farmers. (FCIC 1240.)

Still, in 2012, the Board approved the submission based on materials submitted to the Board but permitted the Risk Management Agency ("RMA") to make technical policy changes necessary to make the policy legally sufficient. (FCIC 1499.) But for reasons unclear in the administrative record, at some point the section of the policy dealing with the contingency procedure was completely rewritten. (FCIC 1501.) The language in the section did not match what had been submitted to and approved by the Board. (FCIC 1501.) Instead, the policy stated, "If the harvest price cannot be calculated in accordance

with [the AMS Method,] the harvest price will be equal to the projected price." (FCIC 1501.) This change was not resubmitted to the Board.

In 2015, Plaintiffs purchased the policy that contained this substituted language. (3rd Am. Compl., Ex. A at 2, Feb. 26, 2019, Docket No. 89.) In December 2015, it became clear that there would not be sufficient AMS data to establish a 2015 harvest price for dark red kidney beans in Minnesota. (FCIC 2350.) As a result, the RMA announced that, pursuant to the policy language, the harvest price would be set to the projected price. (FCIC 2326.) As predicted, setting the harvest price to the projected price essentially converted the Plaintiffs' revenue policies into expensive yield policies and Plaintiffs could not recoup their revenue losses. (FCIC 10796–97, 14499.)

## II.   PROCEDURAL HISTORY

Plaintiffs originally brought this case as a putative class action in the Eastern District of Michigan on behalf of farmers in Michigan, Minnesota, and North Dakota, requesting judicial review of the FCIC approval of the insurance product at issue here. (Compl., June 5, 2017, Docket No. 1.) The Michigan court transferred the Minnesota Plaintiffs to the District of Minnesota. (Order, June 1, 2018, Docket No. 80.) The Minnesota Plaintiffs then filed a Third Amended Complaint. (3rd Am. Compl.)

Defendants and the Minnesota Plaintiffs filed cross motions for summary judgment with this Court. (Pls.' Mot. for Summ. J., Sept. 6, 2019, Docket No. 131; Defs.' Mot. Dismiss or Summ. J., Oct. 25, 2019, Docket No. 141.) The Court denied Plaintiffs' motion and granted summary judgment to Defendants. *Elbert I*, 2020 WL 4926635, at

\*17.  Plaintiffs filed a motion to reconsider.  (Mot. Reconsider, Oct. 23, 2020, Docket No. 180.)

The Court reversed its first summary judgment order based on the significant post-FCIC approval changes that were made to the policy, denied Defendants' motion, and granted Plaintiffs' motion for summary judgment because the FCIC violated the APA when it acted without observance of procedure.  *Elbert II*, 546 F. Supp. 3d at 821–23.  As a remedy, the Court ordered Defendants to consider whether to alter the originally approved language "anew as if it had been properly resubmitted for approval in the first place."  *Elbert III*, 2022 WL 2670069, at \*6.

Following remand, Defendants reopened expert review of the contingency pricing mechanism to determine whether to change the policy language from "determined and set by FCIC" to "will be equal to the projected price."  (Exhibit List, Ex. 3 at 64,[2] Sept. 11, 2024, Docket No. 238.)  Upon reevaluation, five experts returned with the following recommendations:

- Recommends maintaining the current [Dry Bean Revenue Endorsement ("DBRE")] policy language. Best solution is to set harvest price equal to projected price. Argued this is the only transparent and objective solution and giving flexibility for FCIC to determine would invite litigation.
- Best solution is to set harvest price equal to projected price. Only transparent solution and producers can select [yield protection] if they don't want to take the risk.

---

[2] Page numbers here reference ECF pagination.

- Recommends maintaining the current DBRE policy language. Best solution is to set harvest price equal to projected price. Premium rates need to reflect the contingency. Policy contains contradictory language about the contingency that needs to be revised.
- Recommends maintaining the current DBRE policy language. Best solution is to set harvest price equal to projected price. Program should not be offered where price data is likely to be thin.
- Implied that set harvest price equal to projected price is the only logical solution. However, argued that premium should be refunded if the harvest price is set equal to the projected price.

(*Id.* at 65.) When presenting to the board, RMA also offered a few "comments":

- RMA agrees with the reviewers that the best option is to set the harvest price equal to the projected price in the event there is insufficient data
- Some sort of premium adjustment could be appropriate because of the pricing contingency
    - Impact very small
- Steps have already been taken by the Board and the Board [sic] to reduce the chances of the contingency triggering

(*Id.* at 66.)

Ultimately, the Board approved the change in language to the contingency pricing mechanism, which set the harvest price equal to the projected price. (*Id.* at 67.) Dissatisfied with this outcome, Plaintiffs allege Defendants' reconsideration of the contingency pricing mechanism did not comply with the Court's Order. (Pls.' Mot. for Writ of Mandamus ¶¶ 14–16, Sept. 10, 2024, Docket No. 236.) To remedy the alleged

noncompliance, Plaintiffs petition for a writ of mandamus under 28 U.S.C. § 1361 to compel compliance.[3] (*Id.* at 11.)

## DISCUSSION

### I. STANDARD OF REVIEW

Under the Mandamus Act, a district court "shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. However, writs of mandamus may only be issued in extraordinary circumstances when (1) the plaintiff has "a clear and indisputable right to the relief" he seeks, (2) the defendant has a "nondiscretionary duty to honor that right," and (3) the plaintiff lacks an alternative, adequate remedy. *Mitchael v. Colvin*, 809 F.3d 1050, 1054 (8th Cir. 2016) (quoting *Castillo v. Ridge*, 445 F.3d 1057, 1060–61 (8th Cir. 2006)).

### II. ANALYSIS

Plaintiffs petition for a writ of mandamus that would order Defendants to (1) reevaluate their contingency pricing method, or (2) comb through retroactive data and set a 2015 harvest price for dark red kidney beans in Minnesota. Plaintiffs assert that their right to one or both remedies flows from the Court's remand order, that Defendants

---

[3] Plaintiffs also filed a similar Motion to Enforce Remand Order in the sister litigation in Eastern District of Michigan. *Ackerman Bros. Farms, LLC v. U.S. Dep't of Agric.*, No. 1:17-11779, 2025 WL 1513950, at *4 (E.D. Mich. May 28, 2025). But that court denied the motion for want of jurisdiction and opened the door for Plaintiffs to file their grievances as an APA claim in a new case. *Id.* at *5.

have no discretion to deny that right, and that Plaintiffs lack any other adequate remedy. But none of these are true.

First, the Court's order did not provide Plaintiffs a clear and indisputable right to have the Board reevaluate the contingency pricing method once again or set a new 2015 price. Instead, the Court's Order required the Board "to reconsider whether to alter the originally approved language" and specifically to "consider whether to amend the contingency pricing mechanism for dark red kidney beans in Minnesota for the 2015 crop year or to leave the originally approved method in place of having the FCIC establish a price." *Elbert III*, 2022 WL 2670069, at *6. In short, the Court did not mandate one outcome. Nothing in the Court's Order establishes an indisputable right for the Plaintiffs to demand a reevaluation if they were unhappy with the result the Board reached, and it certainly does not establish a clear right for Plaintiffs to demand the Board set a 2015 price.

Second, even if the Court's Order provided Plaintiffs a clear right, Defendants did not have a non-discretionary duty to honor that right. To the contrary, the Order imbued a high degree of discretion to the Board by providing it with several ways to respond on remand. For better or for worse, the Board gathered the opinions of experts, considered whether to amend the contingency price mechanism, and ultimately formally adopted policy language that allowed the policies to use the projected price when insufficient data was available to establish a harvest price. Though the Court surely would have reached a

different conclusion as to whether the pricing method approved by the Board adequately protected farmers, a writ of mandamus is inappropriate in the face of the discretion the Board wielded in its decision-making process. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004) (noting writs of mandamus are limited to ordering a precise and definite act over which an agency has no discretion whatsoever).

Third, Plaintiffs have an alternative remedy: a new APA claim. The thrust of Plaintiffs' motion is that they believe the Board came to the wrong conclusion yet again. Plaintiffs may be correct. But the avenue for challenging that decision is a new claim under the APA, which would begin a substantive review of whether Defendants' actions on remand were arbitrary and capricious, or otherwise unlawful. This kind of agency review must occur under the APA's review provisions and not via the Court's equitable powers—not least because judicial review of agency action should be conducted on a complete administrative record. Because Plaintiffs have an alternative remedy at law, the Court cannot issue a writ of mandamus.

Therefore, the Court will deny the Plaintiffs' petition for a writ of mandamus. To the extent Plaintiffs seek to challenge the Board's decision on remand, they "must seek it through a separate APA challenge." *Heartland Reg'l Med. Ctr. v. Leavitt*, 415 F.3d 24, 33 (D.C. Cir. 2005). A follow-up motion in this case or as an amendment to their complaint cannot provide the requested remedy. *Cf. Ackerman Bros. Farms, LLC v. U.S. Dep't of Agric.*, No. 1:17-11779, 2025 WL 1513950, at *4 (E.D. Mich. May 28, 2025) (noting, in the

parallel Michigan action, that the court did not retain jurisdiction on remand and that plaintiffs must therefore "initiate a separate case under the APA to challenge the FCIC's most recent decision on remand to approve" the insurance policy). Because the Court can provide no further relief, this case is closed.[4]

## CONCLUSION

For reasons that confound this Court, Defendants have continued to insist that a virtually worthless insurance product adequately protects the interests of farmers. However, the FCIC Board did as it was instructed to do in the Court's prior order: it reached out to experts anew, reevaluated the insurance product at issue here, and determined that insurers should be able to sell a product that sets the harvest price at the projected price in the absence of adequate data. Accordingly, a writ of mandamus requiring Defendants to reevaluate the policy yet again or set a retroactive harvest price for 2015 is an improper remedy. Instead, should Plaintiffs wish to seek judicial review of this new agency action, they must bring a new APA claim in a separate case.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that

1. Plaintiffs' Petition for Writ of Mandamus [Docket No. 236] is **DENIED**.

---

[4] The Court presumes that if a new APA claim is filed in the District of Minnesota, Plaintiffs will note in their pleadings that it is a related case to this one, which typically assures the case will be assigned (or reassigned) to this Court.

CASE 0:18-cv-01574-JRT-SGE   Doc. 262   Filed 08/08/25   Page 12 of 12

-12-

    2. Plaintiffs' Motion to Alter/Amend/Supplement Pleadings [Docket No. 253]

is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  August 8, 2025  
at Minneapolis, Minnesota.

                                                    JOHN R. TUNHEIM  
                                          United States District Judge